IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DENNIS ADAMS,                                    06-CV-1674-BR

          Plaintiff,                             OPINION AND ORDER

v.

MICHAEL J. ASTRUE,
Commissioner of Social
Security,

          Defendant.


TIM WILBORN
Wilborn Law Office, P.C.
19093 S. Beavercreek Rd., PMB #314
Oregon City, Oregon 97045
(503) 632-1120

          Attorney for Plaintiff

KARIN J. IMMERGUT
United States Attorney
BRITANNIA I. HOBBS
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2902
(503) 727-1158


1    -   OPINION AND ORDER

**DAVID MORADO**
Regional Chief Counsel
**DAVID M. BLUME**
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900 M/S 901
Seattle, WA 98104-7075
(206) 615-2212

      Attorneys for Defendant


**BROWN, Judge.**

      Plaintiff Dennis Adams seeks judicial review of a final decision of the Commissioner of the Social Security Administration in which he denied Adams's application for Disability Insurance Benefits (DIB).  This Court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g).

      Following a review of the record, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter for further proceedings consistent with this Opinion and Order.


## ADMINISTRATIVE HISTORY

      Adams filed his application for DIB on July 28, 2003. Tr. 58-61.[1]  He was last insured for disability benefits on March 31, 1999.  Tr. 17.  Adams's application was denied

---

     [1] Citations to the official transcript of record filed by the Commissioner on February 21, 2007, are referred to as "Tr."

2   -  OPINION AND ORDER

initially and on reconsideration.  Tr. 30-34, 37-39.  An
Administrative Law Judge (ALJ) held a hearing on June 15, 2005.
Tr. 46-50, 433-59.  Adams was the sole witness to testify at the
hearing.  Tr. 433-59.  He was represented by an attorney.
Tr. 44-45, 434-36.  On September 20, 2005, the ALJ issued a
decision in which he found Adams is not disabled and, therefore,
is not entitled to benefits.  Tr. 17-26.

On September 15, 2006, the Appeals Council denied Adams's
request for review.  Tr. 6-11.  The ALJ's decision, therefore,
became the final decision of the Commissioner on September 15,
2006.


## BACKGROUND

Adams was 61 years old at the time of the hearing before the
ALJ.  Tr. 58.  Adams is a high-school graduate and attended two
years of college, but he did not receive any specialized
vocational training.  Tr. 74, 94.  He has worked as a substitute
bus driver, commercial fisherman, and saw-and-stacker operator in
lumber mills.  Tr. 90-91, 118-22, 438-39.

After many years of heavy labor as a commercial fisherman
and lumber-mill operator, which involved using his hands and
arms, Adams developed pain in his wrists, forearms, and biceps.
Tr. 438-40, 446.  In 1983 and 1985 he had surgeries to correct
carpal-tunnel syndrome in both of his arms.  Tr. 167-68, 338-51.

3   -   OPINION AND ORDER

Due to continuing pain in his arms, Adams was unable to continue working in a lumber mill, and he quit in April 1993.  Tr. 351-57, 375-80.  Adams has an alleged onset date of April 2, 1993. Tr. 17, 58.  In 1996 Adams had surgery to repair a torn rotator cuff in his right shoulder, and he fully recovered.  Tr. 225-27, 250.  The pain in Adams's right elbow, however, worsened to the point in 1995 that he struggled to brush his teeth, to shave, and even "to touch his nose."  Tr. 230, 264.  As a result, Adams had surgery in February 1997, which included a right anterior ulnar nerve transposition and medial epicondylectomy.  Tr. 223-24.

Adams also has been diagnosed with right medial epicondylitis and tendinitis in his right forearm and elbow. Tr. 258.  He also has been diagnosed with overuse syndrome and myofascial pain syndrome in both arms.  Tr. 172-74, 188-90, 265, 356.

In 1998 Adams suffered a back injury while trying to pick up a bag of groceries.  Tr. 305.  X-rays of Adams's lower back in June 1998 revealed some minor degenerative changes and disc bulging but no compressions or spondylosis.  Tr. 284.  In 1999 Adams further aggravated his back while hiking when he slipped and fell three to four feet onto a log and landed on his back. Tr. 305, 443-45.

Because Adams's disability coverage ended on March 31, 1999, he must prove he was disabled as of that date to be entitled to

4   -   OPINION AND ORDER

DIB benefits.  *See* 42 U.S.C. § 423(a)(1)(A).  *See also* 20 C.F.R.
§ 404.131; *Thomas v. Barnhart*, 278 F.3d 847, 954-55 (9th Cir.
2002)(a DIB claimant must establish his period of disability
began while he was insured for DIB).

<u>**STANDARDS**</u>

        The initial burden of proof rests on the claimant to
establish disability.  *Ukolov v. Barnhart*, 420 F.3d 1002, 1004
(9th Cir. 2005).  To meet this burden, a claimant must
demonstrate his inability "to engage in any substantial gainful
activity by reason of any medically determinable physical or
mental impairment which . . . has lasted or can be expected to
last for a continuous period of not less than 12 months."
42 U.S.C. § 423(d)(1)(A).  The Commissioner bears the burden of
developing the record.  *Reed v. Massanari*, 270 F.3d 838, 841
(9th Cir. 2001).

        The district court must affirm the Commissioner's decision
if it is based on proper legal standards and the findings are
supported by substantial evidence in the record as a whole.
42 U.S.C. § 405(g).  *See also Batson v. Comm'r of Soc. Sec.
Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).  "Substantial
evidence means more than a mere scintilla, but less than a
preponderance, i.e., such relevant evidence as a reasonable mind
might accept as adequate to support a conclusion."  *Robbins v.*

*Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)(internal quotations omitted).

The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence, and resolving ambiguities. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision. *Robbins,* 466 F.3d at 882. The Commissioner's decision must be upheld even if the evidence is susceptible to more than one rational interpretation. *Webb v. Barnhart*, 433 F.3d 683, 689 (9th Cir. 2005). The Court may not substitute its judgment for that of the Commissioner. *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).

## DISABILITY ANALYSIS

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). *See also* 20 C.F.R. § 404.1520. Each step is potentially dispositive. "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Ukolov*, 420 F.3d at 1003.

In Step One, the claimant is not disabled if the Commissioner determines the claimant is engaged in substantial

6   -   OPINION AND ORDER

gainful activity. *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d
1050, 1052 (9th Cir. 2006). *See also* 20 C.F.R. § 404.1520(a)(4).

In Step Two, the claimant is not disabled if the
Commissioner determines the claimant does not have any medically
severe impairment or combination of impairments. *Stout*, 454 F.3d
at 1052. *See also* 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii). A
severe impairment "significantly limits" a claimant's "physical
or mental ability to do basic work activities." 20 C.F.R.
§ 404.1521(a). *See also Ukolov*, 420 F.3d at 1003. The ability
to do basic work activities is defined as "the abilities and
aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(a),
(b). Such abilities and aptitudes include walking, standing,
sitting, lifting, pushing, pulling, reaching, carrying, handling,
seeing, hearing, speaking; understanding, carrying out, and
remembering simple instructions; using judgment; responding
appropriately to supervision, co-workers, and usual work
situations; and dealing with changes in a routine work setting.
*Id.*

The Step Two threshold is low. "[A]n impairment can be
considered as not severe only if it is a slight abnormality which
has such a minimal effect on the individual that it would not be
expected to interfere with the individual's ability to work
. . . . [T]he severity regulation is to do no more than allow
the Secretary to deny benefits summarily to those applicants with

7  -  OPINION AND ORDER

impairments of a minimal nature which could never prevent a
person from working."  Social Security Ruling (SSR) 85-28, at *2
(Nov. 30, 1984)(internal quotations omitted).  The Ninth Circuit
describes Step Two as a "*de minimus* screening device to dispose
of groundless claims." *Smolen*, 80 F.3d at 1290.  *See also Webb
v. Barnhart*, 433 F.3d 683, 686-88 (9th Cir. 2005).  "Great care
should be exercised in applying the not severe impairment
concept." SSR 85-28, at *4.

## ALJ'S FINDINGS

At Step One, the ALJ found Adams has not engaged in
substantial gainful activity since his alleged onset date of
April 2, 1993.  Tr. 19.  The ALJ, however, found Adams had
engaged in unsubstantial work since that time as a substitute bus
driver and as a self-employed woodworker.  Tr. 19.

At Step Two, the ALJ found Adams had the medically
determinable impairment of right anterior ulnar nerve
transposition and medial humeral epicondylitis through Adams's
date last insured, but that Adams did not have a back impairment.
Tr. 19.  The ALJ concluded Adams's arm impairments did not
significantly limit his ability to perform basic work-related
activities, and, therefore, his arm impairments were not severe.
Tr. 19-22.  In light of his determination that Adams did not have
a severe impairment as of March 31, 1999, the ALJ found Adams was

8   -  OPINION AND ORDER

not disabled and, as a result, was not entitled to DIB.  Tr. 25-
26.  The ALJ, therefore, did not proceed past Step Two.


## DISCUSSION

Adams contends the ALJ erred by (1) finding Adams's
testimony concerning the effects of his impairments is not
credible; (2) improperly rejecting Sarah Adams's statements
describing the limitations on Adams's daily activities;
(3) failing to give the proper weight to the opinions of Adams's
treating physician, Paul M. Puziss, M.D.; and (4) finding at Step
Two of the five-step sequential analysis that Adams's impairments
are not severe.

**I.   Lay Testimony.**

**A.   Dennis Adams.**

Adams challenges the ALJ's finding that Adams's testimony
regarding the limiting effects of his impairments is "not
entirely credible."  Tr. 20, 22-23.

**1.   Claimant's Subjective Symptom Testimony.**

The test for rejecting a claimant's subjective symptom
testimony is set out in *Cotton v. Bowen*, 799 F.2d 1403 (9th Cir.
1986), *aff'd in Bunnell v. Sullivan*, 947 F.2d 341 (9th Cir.
1991).  The *Cotton* test establishes two basic requirements for a
claimant to present credible symptom testimony:  He must produce
objective medical evidence of an impairment or impairments, and

9   -  OPINION AND ORDER

he must show the impairment or combination of impairments could reasonably be expected to produce some degree of symptom. *Cotton*, 799 F.2d at 1407. The claimant, however, need not produce objective medical evidence of the actual symptoms or their severity. *Smolen*, 80 F.3d at 1284.

If the claimant satisfies the above test and there is not any affirmative evidence of malingering, the ALJ can only reject the claimant's pain testimony if he provides clear and convincing reasons for doing so. *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). *See also Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989). General assertions that the claimant's testimony is not credible are insufficient. "[T]he ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834.

Adams testified at the hearing before the ALJ that he has been continuously limited by pain in his arms since the early 1990s, which limits his ability at times to hold a cup of coffee or lift a gallon of milk out of the refrigerator. Tr. 440, 446. Adams's pain questionnaire reflects he is unable to perform basic activities due to the pain caused by reaching or gripping; *i.e.*, turning a door knob, opening food containers, curling his arm at the elbow, and washing dishes. Tr. 115-17. Adams also testified to the effects of his back pain, which at times limits his ability to ride in a car, to sit for prolonged periods, to bend

10  -  OPINION AND ORDER

or twist at the waist, and to lift objects.  Tr. 110, 115.

**2.    ALJ's Decision.**

Although the ALJ found Adams has medically determinable arm impairments, the ALJ found Adams's impairments were not severe.  Tr. 19.  Dr. Puziss, one of Adams's treating physicians, noted on September 9, 1996, that "[Adams] has objective evidence of impairment of the right dominant extremity and this objective impairment has been present since I have been following him beginning 12/22/95."  Tr. 261.  In addition, another one of Adams's treating physicians, Eric W. Long, M.D., concluded on the basis of his nerve-conduction studies that:

> careful analysis of [Adams's] symptoms over the last 3 years, careful review of the objective evidence contained in the medical record, and generated by multiple examiners, and careful analysis of his response to treatment over the past several years leads to the clear conclusion that he has had a combination of ulnar compression neuropathy at the elbow, complicated by myofascial trigger points in the forearm flexors and extensors.  With careful stretching, he has been able to reduce, but not completely eliminate, myofascial tightness.  At times when his myofascial condition has been well controlled, he has still had rather typical symptoms of ulnar compression neuropathy at the elbows . . . .  At times when his myofascial condition has been severe, his presentation has been complex, confusing, and very limiting.
>
> * * *
>
> I have not been impressed that [Adams's] symptoms have been psychologically determined, or that his emotional status has

11  -  OPINION AND ORDER

been a significant factor in the diagnosis or
management of his condition.

Tr. 183-84.

On this record, the Court finds Adams has satisfied the
first two prongs of the *Cotton* test by providing evidence of
impairments that could reasonably cause him some degree of pain.
799 F.2d at 1407.  Thus, because the ALJ did not determine Adams
is malingering, the ALJ must provide clear and convincing reasons
for rejecting Adams's subjective pain testimony regarding his arm
impairments.  *Lester*, 81 F.3d at 834.

The ALJ found Adams's daily activities belied his claim that
his arm impairments limited his ability to work.  Tr. 23.  The
ALJ notes Adams's "active lifestyle" is established by plumbing
work that Adams performed in 1993 and cabinetry and other
woodworking he performed in 1997 and thereafter.  Tr. 23.  The
record, however, does not reflect Adams performed these
activities without pain nor that he was able to perform such work
with consistency.  Adams described his woodworking as "tinkering"
and testified he made only small wooden boxes to be sold as
gifts.  Tr. 441-42.  On the single large woodworking project
reflected in the record, Adams undertook to make a table with the
assistance of his son, who did the lifting and cutting while
Adams designed and directed the project.  Tr. 442-43.  In any
event, Adams testified he is only able to perform woodworking for
two to three hours at a time.  Tr. 111.  Adams also stated the

12  -  OPINION AND ORDER

sanding associated with this work causes him pain.  Tr. 262.

These limitations are corroborated by Adams's wife in her daily-

activities report and by Dr. Puziss, one of Adams's treating

physicians.  Tr. 103-04, 260-65.  Moreover, the record contains

only a single reference to Adams assisting a neighbor with some

plumbing work.  Tr. 363.  The record does not indicate the level

of exertion required to do that plumbing work and reflects the

work apparently caused Adams pain.  Tr. 363.  In any event, the

Ninth Circuit has held evidence that a claimant performs some

daily activities is not a sufficient basis to discredit a

claimant's subjective symptom testimony:

> This court has repeatedly asserted that the
> mere fact that a plaintiff has carried on
> certain daily activities, such as grocery
> shopping, driving a car, or limited walking
> for exercise, does not in any way detract
> from her credibility as to her overall
> disability.  One does not need to be utterly
> incapacitated in order to be disabled.  In
> addition [such] activities . . . are not
> necessarily transferable to the work setting
> with regard to the impact of pain.  A patient
> may do these activities *despite* pain for
> therapeutic reasons, but that does not mean
> he could concentrate on work despite the pain
> or could engage in similar activity for a
> longer period given the pain involved.

*Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001)(internal

quotations omitted).  Here Adams's daily activities as reflected

in the record do not constitute a sufficient basis to discredit

Adams's subjective symptom testimony.

    The ALJ also discredits Adams's testimony based on the

13  -  OPINION AND ORDER

treatment notes of Douglas Bald, M.D., an examining physician,
from July 1993 and November 1994 in which he reported Adams
experienced little or no pain.  Tr. 23.  Dr. Bald's treatment
notes from July 1993, however, indicate Adams continued to
complain of pain in both arms.  Tr. 348-51.  Although Dr. Bald
described Adams's condition as stationary, he concluded Adams
"will be permanently restricted from heavy repetitive use of his
upper extremities, and specifically would have an estimated
weight lifting limit of occasional lifting of 50 pounds, frequent
lifting or carrying of up to 35 pounds.  These limitations will
be permanent in nature."  Tr. 351.  Moreover, the record is
replete with Adams's continued complaints to his physicians about
pain in his forearms and his search for relief from those
symptoms in dozens of visits to physicians between 1994 and 1999.
Tr. 172-219, 223-76.  In fact, Adams's complaints of pain in his
right elbow led to Dr. Puziss performing surgery to relieve
pressure on the anterior radial nerve, which was causing some of
Adams's pain.  Tr. 223-24.

     The ALJ also discredits Adams's testimony based on an
assessment of the factors that have aggravated Adams's
impairments, which include pulling on an outboard motor starter-
cord, pulling raspberry canes from his yard, and power sanding.
Tr. 23.  The ALJ did not address other activities reflected in
the record that also cause Adams pain such as washing his hair,

14  -  OPINION AND ORDER

brushing his teeth, washing his car, and pronation of his wrist for tasks like using a screwdriver.  Tr. 112, 115, 247, 262, 265, 363.  Such symptoms are corroborated by Adams's treating physicians, Drs. Puziss and Long, and by his wife, Sarah Adams. Tr. 104-06, 182-86, 258-72, 387-90.

The ALJ also discredits Adams's testimony on the ground that Adams did not require pain medication on a regular basis. Tr. 23.  As reflected in the record, however, Adams received physical therapy, cortisone injections, and surgery based on his pain.  Tr. 223-24, 236-44, 258, 267-71.

The ALJ discredits Adams's testimony about his back impairments on the ground that the record is devoid of sufficient objective medical evidence to establish Adams had a back impairment as of March 31, 1999.  Tr. 22.  Although the record is replete with evidence of Adams's back impairment after 2002, there are only two references to Adams's lower back in the record before March 31, 1999.  An x-ray of Adams's back in June of 1998 revealed only "minor degenerative changes with some sclerosis of the L5-S1 facet joints."  Tr. 284.  Houman Sabahi, M.D., the radiologist who examined the x-ray, determined the results were "unremarkable."  Tr. 284.  On June 23, 1998, when Adams sought treatment for pain in his jaw from Sonny Park, M.D., Dr. Park's treatment notes indicate he prescribed medication for Adams's lower back.  Tr. 315.  Dr. Park, however, did not provide an

15  -  OPINION AND ORDER

explanation in his treatment notes for the prescription.  The
ALJ also pointed out that, aside from this prescription, the
record does not reflect Adams sought treatment for his back prior
to March 31, 1999.  Tr. 22.  A letter from Dr. Puziss dated
February 3, 2004, describes Adams's back impairments as being
triggered by a fall sometime in 1999, which "caused an
incremental increase in back pain."  Tr. 305.  Although the
record reflects Adams's spinal condition may have progressed
since then, the record does not contain objective medical
evidence to support Adams's assertion of a severe lower-back
impairment before March 31, 1999.

Thus, on this record, the Court concludes the ALJ erred by
failing to provide clear and convincing reasons supported by the
record for rejecting Adams's testimony regarding his arm
impairments.  The Court, however, concludes the ALJ did not err
when he found the record does not contain sufficient objective
medical evidence to support Adams's claim of a lower-back
impairment before March 31, 1999.

**B.    Sarah Adams.**

Adams contends the ALJ's erred when he rejected the
statements of his wife, Sarah Adams, describing his limitations
resulting from his impairments.

**1.    Lay-Witness Testimony.**

Lay testimony regarding a claimant's symptoms is

16  -  OPINION AND ORDER

competent evidence that the ALJ must consider unless he
"expressly determines to disregard such testimony and gives
reasons germane to each witness for doing so." *Lewis v.
Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). *See also* 20 C.F.R.
§§ 404.1513(d), (e).

On September 11, 2003, Sarah Adams filled out a third-
party functional-capacity report describing Adams's limitations.
Tr. 99-107. She stated Adams's arm and lower-back impairments
limit his ability to perform many basic functions such as
lifting, sitting, standing, or walking for any length of time
without pain. Tr. 104. She also stated Adams can only do
woodworking for a couple of hours before pain, numbness, or
muscle spasms in his hands and arms limit his ability to
continue. Tr. 104-06.

### 2.    ALJ's Decision.

After summarizing Sarah Adams's statements regarding
Adams's limitations, the ALJ found her statements were "credible
observations of the claimant's current functioning. However,
there is no evidence that he experienced the limitations she
describes prior to his date last insured." Tr. 20. This was the
ALJ's sole reason for rejecting Sarah Adams's statements.

Sarah Adams indicates in the report that she has known
Adams for 34 years. Tr. 99. She, therefore, is competent to
describe Adams's limitations during the relevant period from

17  -  OPINION AND ORDER

personal knowledge.  The ALJ did not express the basis for his finding that Sarah Adams's description of Adams's limitations only pertained to his current limitations nor does the record provide such a basis.

The Court, therefore, finds the ALJ erred when he discredited Sarah Adams's statements describing the daily limitations that result from Adams's impairments because the ALJ did not provide reasons germane to Sarah Adams for doing so.

## II.  Medical Testimony.

Adams contends the ALJ erred when he assigned "little weight" to the opinion of Dr. Puziss in determining Adams did not have a severe impairment at Step Two.  Tr. 24.

An ALJ may reject an examining or treating physician's opinion when it is inconsistent with the opinions of other treating or examining physicians if the ALJ makes "findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record."  *Thomas*, 278 F.3d at 957 (quoting *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).  When the medical opinion of an examining or treating physician is uncontroverted, however, the ALJ must give "clear and convincing reasons" for rejecting it.  *Thomas*, 278 F.3d at 957.  *See also Lester*, 81 F.3d at 830-32.

A nonexamining physician is one who neither examines nor treats the claimant.  *Lester*, 81 F.3d at 830.  "The opinion of a

nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." *Id.* at 831.  When a nonexamining physician's opinion contradicts an examining physician's opinion and the ALJ gives greater weight to the nonexamining physician's opinion, the ALJ must articulate his reasons for doing so. *See, e.g., Morgan v. Comm'r of Soc. Sec. Admin*, 169 F.3d 595, 600-01 (9th Cir. 1999).  A nonexamining physician's opinion can constitute substantial evidence if it is supported by other evidence in the record.  *Id.* at 600.

### A.    Dr. Puziss's Opinion.

Dr. Puziss's continuing relationship with Adams as his treating physician makes him "especially qualified to evaluate reports from examining doctors, to integrate the medical information they provide, and to form an overall conclusion as to functional capacities and limitations, as well as to prescribe or approve the overall course of treatment." *Lester*, 81 F.3d at 833.  The ALJ, therefore, must "give weight not only to the treating physician's clinical findings and interpretation of test results, but also to his subjective judgments." *Id.* at 832-33.

Since late 1995, Dr. Puziss treated Adams on dozens of occasions for pain in his arms and back.  Tr. 223-28, 245-73, 305-13, 387-400, 427-28.  Moreover, Dr. Puziss performed surgeries to repair Adams's torn right rotator cuff in 1996 and

to relieve pressure on the ulnar nerve in Adams's right elbow in
1997.  Tr. 223-27, 250.  Based on his extensive treatment of
Adams and a review of clinical records such as Dr. Long's nerve-
conduction studies, Dr. Puziss diagnosed Adams with myofascial
pain in both forearms, bilateral medial humeral epicondylitis,
left lateral medial epicondylitis, right cubital tunnel syndrome,
flexor and pronator tendinitis, and bilateral overuse syndrome.
Tr. 256, 258, 260, 262-66.  As a result of these conditions,
Dr. Puziss opined Adams was limited in his ability to perform
work-related functions and concluded "[Adams] is disabled from
using his right elbow for any kind of work although he can
write."  Tr. 262.  On November 24, 1997, four months after
surgically repairing Adams's right elbow and forearm, Dr. Puziss
released Adams to perform only light work "without repetitive or
forced pronation of the elbow."  Tr. 246, 251-53.  On February 5,
1998, Dr. Puziss reported Adams's condition relative to his
surgically repaired elbow was "stationary" as of December 29,
1997, and "essentially without impairment."  Tr. 245.  Dr. Puziss
re-examined Adams in May 2005 and found:

> Based on what I know of this patient, he
> would have the same functional capacity
> between 1997 and March 1999. At that point in
> time, he was not capable of more than very
> light work.  His conditions are somewhat
> progressive over time.  He clearly cannot
> return to work as a fisherman, portable
> sawmill operator, or pipe fitter, and will
> never again be able to attempt more than
> sedentary or light work.

Tr. 390.  Dr. Puziss completed a functional-capacity assessment
in concert with his examination of Adams and indicated Adams is
limited to sedentary work and would miss more than three days per
month if he worked.  Tr. 391-95.

     **B.  ALJ's Decision.**

     The ALJ gave little weight to Dr. Puziss's opinion assessing
the severity of Adams's impairments on the bases that his opinion
is inconsistent with Adams's daily activities and that his
February 5, 1998, and May 3, 2005, opinions were inconsistent.
Tr. 24-25.  The ALJ assigned significant weight to the opinion of
examining physician Kenneth Wilson, M.D., who evaluated Adams
twice in late 1993 and again in early 2006.  Tr. 24.  The ALJ
noted Dr. Wilson's opinion that Adams could perform "any type of
employment without restrictions" contradicts Dr. Puziss's
assessment of Adams's impairments.  Tr. 24, 165-68.  Because the
opinion of Dr. Wilson, an examining physician, contradicts the
opinion of Dr. Puziss, a treating physician, the ALJ must provide
specific, legitimate reasons for rejecting Dr. Puziss's opinion.

     As noted, the ALJ concluded Dr. Puziss's opinions as to
Adams's inability to perform basic work activities were
inconsistent with Adams's daily activities, including
woodworking, making cabinets, plumbing, using a table saw, and
sanding.  Tr. 24.  The record, however, does not reflect the
extent to which Adams assisted his neighbor in the plumbing

21  -  OPINION AND ORDER

project.  Adams also testified he only did small woodworking
projects for two hours at a time, and the record reflects this
type of work causes Adams pain.  Tr. 111, 260, 262, 441-43.

The Ninth Circuit has held the intermittency of a claimant's
symptoms and his sporadic ability to work do not preclude a
finding of disability.  *Lester*, 81 F.3d at 833.  Thus, the fact
that Adams is capable of some daily activities is not sufficient
to discredit Dr. Puziss's assessment of Adams's inability to
perform basic work activities.  On this record, therefore, the
Court concludes Adams's limited daily activities are consistent
with Dr. Puziss's opinion that Adams could only perform light
work without repetitive or heavy use of the right forearm and
elbow.

The ALJ also found Dr. Puziss's opinions of February 5,
1998, and May 3, 2005, were inconsistent.  On February 5, 1998,
five months after Dr. Puziss surgically repaired Adams's anterior
ulnar neuropathy, Dr. Puziss concluded Adams was stationary as of
the end of 1997 and was essentially without impairment.  Tr. 245.
On May 3, 2005, Dr. Puziss found Adams was limited to sedentary
work and minimal use of his arms between 1997 and 1999 based on
the totality of his impairments.  Tr. 387-400.  Dr. Puziss
submitted a letter to Adams's counsel on August 1, 2005, in which
he attempted to reconcile his opinions.  Tr. 427-28.  In that
letter, Dr. Puziss indicated his original 1998 opinion solely

addressed the status of Adams's recovery from the surgical procedure on Adams's arm performed by Dr. Puziss.  Tr. 427-28. At the time, Dr. Puziss was only treating Adams for his arm impairments.  Tr. 427.  Dr. Puziss stated his opinion on May 2005 was based on a review of Adams's impairments in their entirety. Tr. 427-28.  Thus, he reported even though Adams had recovered from the elbow problems he once had, other physical impairments "now prevail" and limit Adams's ability to work.  Tr. 427-28.  In his May 2005 opinion, Dr. Puziss primarily relies on Adams's lower-back impairments to support his assessment of Adams's limitations.  Tr. 427-28.

Although this Court concludes the record does not contain sufficient evidence regarding Adams's alleged lower-back impairments to support a finding that such impairments existed as of March 31, 1999, that fact does not undermine Dr. Puziss's earlier opinions regarding Adams's arm impairments and their limiting effects.  Thus, the ALJ erred when he gave little weight to Dr. Puziss's pre-1998 opinions as to the severity of the limitations Adams suffered as a result of his arm impairments because the ALJ did not provide specific, legitimate reasons for discrediting those opinions.

When the ALJ does not provide a legally sufficient basis for rejecting a treating physician's opinion, the Court may credit that opinion as a matter of law.  *Lester*, 81 F.3d at 834.  If the

23  -  OPINION AND ORDER

pre-1998 opinions of Dr. Puziss are credited as true, the record supports a finding that Adams was limited by his arm impairments to light work with no repetitive use of his right elbow at least through December 2007.

**III. Severity of Impairments at Step Two.**

Adams contends the ALJ erred when he found at Step Two that Adams's impairments were not severe.

Adams's testimony regarding his subjective pain symptoms and his functional limitations; Sarah Adams's statements as to Adams's functional limitations in his daily activities; the medical records and opinions from examining physician, Dr. Bald; and the treatment records and opinions from Adams's treating physicians, Drs. Puziss and Long, support a finding that Adams's arm impairments during the pertinent period significantly limited his ability to perform basic work activities such as "lifting, pushing, pulling, reaching, carrying, [or] handling." Tr. 103-04, 110-12, 115-117, 191, 203, 247, 251, 253, 258, 262, 351, 356, 441-46. *See also* 20 C.F.R. §§ 404.1521(a), (b).

As noted, an impairment is severe unless it "has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work." SSR 85-28, at *2. Based on this record, the Court finds Adams has satisfied the Ninth Circuit "*de minimus*" threshold at Step Two in establishing that his impairments are severe within the meaning

of the Social Security regulations.

Accordingly, the Court concludes the ALJ erred when he found at Step Two that Adams's impairments were "not severe."

### REMAND

The decision whether to remand this case for further proceedings or for the payment of benefits is a decision within the discretion of the court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2001).

The decision whether to remand for further proceedings or for immediate payment of benefits generally turns on the likely utility of further proceedings. *Id.* at 1179. The court may "direct an award of benefits where the record has been fully developed and where further administrative proceedings would serve no useful purpose." *Smolen*, 80 F.3d at 1292.

The Ninth Circuit has established a three-part test "for determining when evidence should be credited and an immediate award of benefits directed." *Harman*, 211 F.3d at 1178. The court should grant an immediate award of benefits when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Id.* The second and third prongs of the test often merge into a single question:  Whether the ALJ would have to award benefits if the case were remanded for further proceedings.  *Id.* at 1178 n.2.

Here the Court finds remand for further proceedings is required because the ALJ erred when he found at Step Two of the five-step sequential analysis that Adams's impairments were not severe.  Thus, further proceedings are necessary to determine whether Adams was disabled within the meaning of the Social Security Act prior to March 31, 1999, his last date insured.


## CONCLUSION

For these reasons, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter pursuant to 42 U.S.C. § 405(g) for further proceedings consistent with this Opinion and Order.

IT IS SO ORDERED.

DATED this 17th day of December, 2007.


/s/ Anna J. Brown

_____
ANNA J. BROWN
United States District Judge


26  -  OPINION AND ORDER